UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEKWISSEN LLC,

    Plaintiff,                                        Case Number: 14-12839
                                                   HON. GERSHWIN A. DRAIN

v.

MAHIKPREET KAUR,

    Defendant.

_____/

## ORDER DENYING PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. INTRODUCTION

On July 21, 2014, Plaintiff TekWissen LLC filed the instant action against Defendant Mahikpreet Kaur. Plaintiff makes the following claims: (a) injunctive relief (Count I); (b) breach of contract (Count II); (c) tortious interference with business relations (Count III); and (d) tortious interference with contractual relationships (Count IV). Plaintiff's cause of action stems from an alleged employment relationship between Plaintiff and Defendant that commenced in June 2013 and ceased on November 30, 2013.

Presently before the Court is Plaintiff's "Motion for Partial Summary Judgment,"[1] filed on

---

[1] Plaintiff titles its motion as one for "partial summary judgment" but moves the Court to enter judgment in Plaintiff's favor "on all claims." [Plf. Mtn. at Pg ID 98] Plaintiff's motion does not address its four claims separately; rather, it only posits argument regarding Defendant's alleged breach of contract, *i.e.*, no arguments are made regarding the two tortious interference claims. Further, although Defendant has not filed a dispositive motion, Plaintiff cannot recover, as a matter of law, on its "claim" for injunctive relief (Count I) because it is not a substantive legal claim. *See, e.g.*, *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013) (holding that a request for injunctive relief is a remedy and not a separate cause of action); *Terlecki v. Stewart*, 278 Mich.App. 644, 663 (2008) ("It is well settled that an injunction is an

August 10, 2015. The motion is fully briefed, and a hearing was scheduled for October 26, 2015. After reviewing the pleadings and the parties' briefs, the Court concludes that oral argument is unnecessary. Accordingly, the Court will resolve the present motion on the submitted brief. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court will DENY Plaintiff's Motion for Partial Summary Judgment.

## II. FACTUAL BACKGROUND

In March 2013, Defendant was living in Iowa and looking for a permanent position as a structured query language server database administrator ("SQL DBA"). A friend recommended Plaintiff to her as a recruiting firm. Plaintiff identifies itself as an information and technology services company that "provides end-to-end IT services" and indicates that it "is in the business of providing services that help clients to innovate, commercialize and evolve products for the connected world." [Plf. Mtn at Pg ID 98; Plf. Reply at Pg ID189 (fn. 1)] As it relates to its relationship with Defendant, however, it seems that Plaintiff would best be described as providing recruiting/placement services. In email correspondence dated March 13, 2013, Defendant agreed to allow Plaintiff to circulate her resume pursuant to the following understandings: (1) Defendant would be on Plaintiff's payroll with a "80:20 Percentage;" (2) Plaintiff would not be responsible for any relocation expenses Defendant might incur; and (3) Plaintiff would not provide any medical benefits to Defendant. [Def. Rsp. at Pg ID 148; Def. Rsp., Ex. 1 at Pg ID 162-63]

In April 2013, a second recruiting firm, Panzer Solutions ("Panzer"), contacted Defendant about an SQL DBA position with 3M in Minnesota. [Def. Rsp. at Pg ID 148] Defendant states that she advised Panzer she was working with Plaintiff and could take the 3M position through Plaintiff.

---

equitable remedy, not an independent cause of action").

*Id.* Though it is unclear whether the SQL DBA position was listed with Plaintiff and/or Panzer, it is undisputed that 3M had listed the SQL DBA position with a third recruiting firm, Lawinger Consulting Inc. ("LCI"). [Plf. Mtn., Ex. B at Pg ID 122; Def. Rsp. at Pg ID 148] In a letter dated May 31, 2014, Plaintiff was offered a position by LCI "on assignment at 3M" in Minnesota, with a start date of June 17, 2013. [Def. Rsp., Ex. 3 at Pg ID 168] Defendant states that she took the position with 3M and moved to Minnesota because it was a contract-to-hire position, "which meant that it was anticipated by all parties that [Defendant] would eventually work for 3M at a permanent position." [Def. Rsp., Ex. 5 at Pg ID 175] Plaintiff signed a Confidentiality Agreement with LCI on June 5, 2013. [Def. Rsp., Ex. 4 at Pg ID 170-72]

Defendant states that, after she began working at 3M, Plaintiff contacted her and told her that she needed to sign some paperwork in order to get paid. [Plf. Mtn., Ex. B at Pg ID 123] On or about June 28, 2013, Defendant signed an "Employment Agreement" with Plaintiff ("Agreement"). [Plf. Mtn., Ex. A.] Paragraph 1 of the Agreement indicates that Defendant would have the duties specified in "Exhibit A" to the Agreement, but no "Exhibit A" was attached to the Agreement. *Id.*

There does not appear to be any dispute that Plaintiff issued Defendant paychecks for the work she performed at 3M between June 17, 2013 and November 30, 2013—though Defendant contends she was not paid correctly and was not paid until six weeks after she completed her work for a month (*e.g.*, Plaintiff paid her in mid-September for work completed during July). It is undisputed that Plaintiff did not offer or provide any medical or dental benefits to Defendant at any time. [Plf. Reply at Pg ID 179] While working at 3M prior to November 30, 2013, Defendant was employed as an SQL DBA, and her role was to develop and design database strategies, system monitoring and improving the database performance, capacity and planning for future expansions. [Plf. Mtn. Ex. B, at Pg ID 121]

Defendant has produced an email dated October 21, 2013 that she contends she sent to Plaintiff.  Defendant asserts that the email, addressed to Sonali Naidu, Plaintiff's Human Resources Manager (at "sonali@tekwissen.com"), was sent for the purpose of giving notice that Defendant would leave her employment with Plaintiff.  The October 21, 2013 email stated:

Hi Sonali,

> Please find attached is a note from my OB. Since our little one is coming soon, we will be needing health benefits for long term[;] therefore I[']m looking to changing my Employer beginning of December. Let me know if you need any other documentation.

Thank you

[Plf. Mtn., Ex. D at Pg ID 131]  Plaintiff asserts that it never received an email from Defendant containing the aforementioned language on or around the alleged date. Compl. ¶18.

At some point in mid-November 2013, Defendant contacted Plaintiff via a phone call and informed Plaintiff she intended to terminate her employment by Plaintiff as of November 30, 2013. [Plf. Mtn. at Pg ID 108; Plf. Reply at Pg ID 181] Defendant ceased working for Plaintiff on November 30, 2013, and she states that: (a) she was hired at that time by LCI to work at 3M, and (b) she continued to work for 3M doing the same work she had while being paid by Plaintiff. [Plf. Mtn., Ex. B, at Pg ID 122] In addition, the parties reference, but do not detail, email communications from Defendant to Plaintiff in December 2013 that were related to her termination.  Notwithstanding the foregoing, on January 6, 2014, Defendant received an email inquiry from Plaintiff regarding Defendant's December 2013 time sheets.  In her January 6, 2014 email response, Plaintiff stated she was "no longer with TekWissen and November 30th was my last day." [Plf. Mtn., Ex. C, at Pg ID 128]

### III.  LAW & ANALYSIS

-4-

**A.     Standard of Review**

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First*

*Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff claims Defendant breached the Agreement in three ways, as discussed below. The elements of a breach of contract claim under Michigan law are: (1) the existence of a contract between the parties; (2) terms requiring the performance of certain actions; (3) a breach, and (4) injury to the non-breaching party. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). *See also In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citation omitted) ("a plaintiff seeking to recover on a breach of contract theory must . . . prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breach caused the plaintiff's injury.").

When a contract is "clear and unambiguous, the contract is construed as a matter of law and enforced as written unless contrary to public policy." *DaimlerChrysler Motors Co., L.LC. v. Bill Davis Racing, Inc.*, 408 F.Supp.2d 337, 345 (E.D. Mich. 2005) (citing *Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel*, 460 Mich. 558, 570 (1999)). "Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided." *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich. App. 486, 491-492 (1998) (quoting *Dillon v. DeNooyer Chevrolet Geo*, 217 Mich. App. 163, 166 (1996)). A substantial breach of a contract occurs when the violation is one that "effects a change in the essential operative elements of the contract, such as a failure of consideration, or something that makes further

performance by the other party ineffective or impossible." *Oak St. Funding, LLC v. Ingram*, 749 F. Supp. 2d 568, 574 (E.D. Mich. 2010), *aff'd,* 511 F. App'x 413 (6th Cir. 2013).

There is no dispute that the Agreement satisfies the first element of a breach of contract claim.

### 1. Alleged Breach of Agreement by Directly Competing with Plaintiff

Plaintiff first argues that Defendant breached Paragraph 9 the Agreement by accepting employment with a competing contracting company (LCI) while she was working for Plaintiff. Paragraph 9 of the Agreement states:

> **9. CONFLICTING EMPLOYMENT:** The Employee agrees that during his or her employment with the Employer, he or she will not accept nor will he or she engage in employment, consulting or other business activity which is directly related to the business of the Employer.

Plaintiff argues that the language of this provision is clear and unambiguous—"an employee cannot accept a competitive position that directly relates to the business of Plaintiff while the employee is employed by Plaintiff." [Plf. Mtn. at Pg ID 103] In this case, Plaintiff asserts Defendant was working for Plaintiff at 3M as an SQL DBA during 2013 but, during that time, she applied to become an employee of LCI, a competitor, to perform the same SQL DBA position at 3M. In support of its argument, Plaintiff relies on the deposition testimony of Defendant that: (1) LCI is an agency that locates open positions at client companies and assigns their employees to projects there, and (2) LCI placed Defendant with 3M to perform work of the same nature Defendant performed while working for Plaintiff. In Plaintiff's words, Defendant "received a paycheck from [Plaintiff] one day and from LCI thereafter to perform work at 3M." [Plf. Mtn. at Pg ID 103]

Defendant argues that Plaintiff has not produced evidence that her employment at 3M conflicted with the business of Plaintiff, such that there could be a breach of Paragraph 9 of the

Agreement. This argument is undermined by Defendant's acknowledgment at her deposition that she is (was) employed by LCI (not 3M) in December 2013. Defendant further argues that she could not have breached the Agreement because she signed the agreement with LCI for the 3M position on June 5, 2013—and was working at the 3M position in June 2013—before she signed the Agreement with Plaintiff. Contrary to Defendant's position, however, Paragraph 9 not only prohibits <u>accepting</u> employment that is directly related to the business of Plaintiff, it also prohibits <u>engaging</u> in any employment that is directly related to the business of Plaintiff.

Defendant also contends that she was never "employed" by Plaintiff to work at 3M because Plaintiff did not find the contract-for-hire position at 3M that Defendant filled. Defendant asserts that the only thing Plaintiff did was take a cut of her salary in exchange for issuing her paycheck. Plaintiff argues Defendant "stated that she obtained the position with 3M in conjunction with Panzer and [Plaintiff] efforts," but Defendant actually testified only that she told Panzer that she was working with Plaintiff and Panzer reached out to Plaintiff. Defendant did not state that she knew of any efforts Plaintiff made to get her the 3M position. Moreover, Plaintiff has not offered any evidence (or even argument) that Plaintiff placed Defendant with 3M. Accordingly, the Court finds that there is a genuine dispute of material fact as to whether Defendant was "employed" by Plaintiff at any time such that she could have violated Paragraph 9 (and, for that matter, Paragraph 12 or 19, which are discussed below).

For the reasons set forth above, the Court will deny Plaintiff's motion for partial summary judgment as it relates to Defendant's alleged breach of Paragraph 9 of the Agreement.

**2. Alleged Breach of Agreement for Soliciting Plaintiff's Client**

Plaintiff next contends Defendant violated Paragraph 12 of the Agreement, which provides in relevant part:

**12. AGREEMENT NOT TO SOLICIT**

a. Employee covenants and agrees that during the terms of his or her employment with Employer and for a period of one (1) year following the termination of such employment, regardless of the reason for such termination, Employee shall refrain from taking any action, for Employee's own benefit or the benefit of others, to divert, solicit or contact any customer of Employer…

Plaintiff maintains that, because Defendant remains at 3M (a company Plaintiff claims is a client) pursuant to her employment by LCI, Defendant has violated Paragraph 12 of the Agreement. More specifically, Plaintiff argues that, by going to work for LCI/3M, Defendant has diverted from Plaintiff the opportunity to provide services to 3M.

Defendant contends that Plaintiff's claim is not viable because Plaintiff has not shown, and cannot show, that 3M was Plaintiff's customer prior to Defendant beginning to work at 3M. Defendant asserts Plaintiff has not shown that it ever had any 3M work and that the Agreement does not mention 3M. As Defendant stated at her deposition, "3M doesn't know anything about TekWissen being a recruiting firm." [Plf's Mtn., Ex. B, at Pg Id 125] In support of her argument, Defendant states that: (a) 3M is a customer of LCI, (b) she was contacted by Panzer and LCI (not Plaintiff) about the 3M position, and (c) even though Plaintiff issued her paycheck, it did so only after 3M had paid Panzer and Panzer then had paid Plaintiff. Therefore, Defendant argues that there is a genuine dispute of material fact as to whether 3M is or ever was a customer of Plaintiff, such that summary judgment is precluded as it relates to Paragraph 12 of the Agreement. Notably, in its reply, Plaintiff did not respond to this argument or offer evidence that 3M is a client of Plaintiff.

For the reasons set forth above, the Court will deny Plaintiff's motion for partial summary judgment as it relates to Defendant's alleged breach of Paragraph 12 of the Agreement.

**3.    Alleged Breach of Agreement for Failure to Provide 30 Days Notice**

Plaintiff also argues that Defendant breached Paragraph 19 of the Agreement because she

did not: (a) give notice of her termination at least 30 days prior to her last day, or (b) "complete all knowledge transfer at the customer location." Paragraph 19 of the Agreement includes the following provision regarding "Termination" (emphasis added):

> **19. TERMINATION:** This is an "at-will" employment relationship and may be terminated by either Employer or Employee at any time (except for terminations that would be in violation of federal or state law). <u>If Employee wishes to terminate this contract while working on customer projects he or she is required to give no less than thirty (30) days prior notice to Employer and complete all knowledge transfer at the customer location</u>. The notice period does not commence until such notice is actually received by the employer. Notice of termination shall be given in writing and delivered by any method including delivery by electronic mail. In the event the employee voluntarily terminates his or her employment without giving thirty (30) days notice, Employer shall be authorized to withhold $25,000 towards liquidated damages for the damages incurred by Employer as a result of the Employee's failure to give the requisite thirty (30) day notice prior to termination. If the Employer is unable to fully withhold $25,000 toward liquidated damages, Employee agrees to pay the entire amount ($25,000) or the entire balance amount due to Employer within 30 days from the date of termination.

Plaintiff asserts that Defendant breached this provision in two ways. Plaintiff first argues Defendant did not provide "definite and unambiguous notice" of the date that she wanted to terminate the Agreement. Plaintiff asserts that Defendant's alleged October 21, 2013 email did not specify a termination date–or even that she was, in fact, going to terminate her employment with Plaintiff. The Court is not persuaded by Plaintiff's argument, however, because there is a genuine dispute of material fact as to whether Defendant gave the notice required by Paragraph 19.

Defendant argues that she provided Plaintiff with adequate timely notice of her termination. Defendant accurately contends that, contrary to Plaintiff's argument, the Agreement does not require that the notice be "definite and unambiguous."[2] Further, Defendant contends that, via her October

---

[2] Defendant seems to acknowledge that neither her phone call to Plaintiff in mid-November 2013 that she was departing at the end of the month nor her email communications from Defendant to Plaintiff in December would satisfy the "30 days notice" requirement.

21, 2013 email, she provided Plaintiff with notice of her intent to terminate employment with Plaintiff more than 30 days prior to her last day working for Plaintiff (November 30, 2013). The parties dispute the existence of this email. Plaintiff contends it never received the email and that Defendant has not produced metadata to demonstrate it was sent. Defendant argues that Plaintiff has not produced records or even an affidavit to demonstrate that Plaintiff did not ever receive it. For purposes of deciding Plaintiff's summary judgment motion, however, the Court must view the facts in a light most favorable to Defendant. In other words, the Court must assume the email was sent on October 21, 2013. Therefore, as Plaintiff contends, it was sent more than 30 days prior to Defendant's last day of employment by Plaintiff (November 30, 2013).

As to whether the October 21, 2013 email adequately notified Plaintiff that Defendant was terminating her employment or that she was doing so on November 30, 2013, it is undisputed that the email provides that Defendant was "looking to chang[e] [her] Employer beginning of December." Although such language is not definite and unambiguous, very little of the communication between Defendant and Plaintiff's employees seems to be written by persons with a firm grasp of the English language. Accordingly, the Court will find that, at a minimum, Defendant was communicating that she was contemplating changing employers at the "beginning of December," *i.e.*, after November 30, 2013. Further, the Court will find that this language is sufficient to create a genuine dispute of material fact on the issue of whether adequate notice of her termination date was given – and leave it to the jury to decide.

Second, Plaintiff argues Defendant did not perform a knowledge transfer before leaving her employment with Plaintiff. Plaintiff does not, however, identify the customer project(s) Defendant was working on at the time she ceased working for Plaintiff, nor does Plaintiff set forth what knowledge transfer had to be completed. In fact, Plaintiff does not even argue in its motion and

-11-

accompanying briefs that Defendant was working on any customer project(s). Defendant did not address this issue at all.

For the reasons set forth above, the Court will deny Plaintiff's motion for partial summary judgment as it relates to Defendant's alleged breach of Paragraph 19 of the Agreement.

### 4. Issue of Which Party was the First to Breach the Agreement

Defendant contends that Plaintiff was the first to breach the Agreement and, as such, Plaintiff cannot maintain an action against Defendant for her alleged subsequent breach or failure to perform. Citing *Able Demolition Inc. v. City of Pontiac*, 275 Mich.App. 577, 585 (2007). Defendant argues that Plaintiff breached the Agreement because Defendant was never given the opportunity to apply for medical or dental benefits, pursuant to the terms of the Agreement. Defendant relies on Paragraph 4.a. of the Agreement, which provides:

> **4.** **BENEFITS:** All of the benefits offered by the Employer are subject to change without prior notice.
>
> a. **Medical and Dental**: The Employee will be eligible to participate in the Employer's group medical and dental insurance plan offered by the Employer, for the Employee and the Employee's immediate family. Each year the Employer will announce its health insurance coverage. The Employer does not guarantee insurability by the insurance provider and the Employee will need to discuss the coverage for pre-existing conditions directly with the insurance provider. The contribution amount will not be paid out as a cash benefit should the Employee decline coverage. Insurance coverage will start on the first day of the month following the month on which employment starts. The Employer also provides coverage for Long Term Disability and Vision for the Employee.

As Defendant notes, one of the reasons specified in her October 21, 2013 email for changing her employer was that she needed long-term health benefits because she was pregnant.

Plaintiff acknowledges that Paragraph 4.a. outlines Defendant's eligibility for medical and dental benefits and that no benefits were offered. Plaintiff argues, however, that the March 13, 2013 email exchange between Defendant and a Plaintiff recruiter provided that Plaintiff "will not provide

-12-

you any medical benefits" and Defendant agreed to that term. Thus, Plaintiff argues, Defendant "accepted the bargained-for-exchange without benefits." Although Defendant may have "agreed" to no medical benefits in the March 13, 2013 email exchange, Plaintiff overlooks the language of Paragraph 29 of the Agreement. Paragraph 29 makes clear that any such understanding or agreement in March 2013 was superseded by the terms of the Agreement when signed in June 2013 ("This Agreement constitutes the entire agreement between the parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement, including, but not limited to, any offer letter . . ."). Plaintiff also argues that Defendant did not end up obtaining medical benefits when she changed employers but, even if that is true, that is irrelevant with respect to determining whether Plaintiff performed under the Agreement.

Accordingly, the Court will find that: (a) the issue of whether Plaintiff breached the Agreement, and (b) whether such breach was material (particularly in light of Defendant's assertion in the October 21, 2013 email that she was looking for alternate employment because she "need[ed] health benefits for long term . . .") are genuine disputes of material facts to be decided by the jury[3] and also deny Plaintiff's motion for partial summary judgment on this basis.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, the Court DENIES Plaintiff's Motion for Partial Summary Judgment.

**SO ORDERED.**

---

[3]Defendant also argues, without authority, that Plaintiff breached the Agreement by continually failing to make timely payments under the Agreement. Plaintiff responds that the 45-day payments do not rise to the level of a material breach and that several agencies in Minnesota previously rejected Defendant's position regarding payment issues.

Dated: October 26, 2015                      <u>s/Gershwin A. Drain</u>
       Detroit, Michigan                     GERSHWIN A. DRAIN
                                               United States District Judge